UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATASHA ODOM, | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-877 |
| | ) |
| v. | ) Hon. Steven C. Seeger |
| | ) |
| LAKESIDE COMMUNITY COMMITTEE, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM OPINION AND ORDER**

Plaintiff Latasha Odom lost custody of her newborn son after he tested positive for drugs. The Illinois Department of Children and Family Services placed the infant in foster care. But Odom did not lose all contact with him. Defendant Lakeside Community Services, a licensed Child Welfare Agency, provided a safe place for Odom to see her child. The visits took place monthly, at set times.

Odom eventually filed a *pro se* complaint, alleging a violation of her constitutional rights. She claims that Lakeside violated her rights when it cancelled an appointment on February 2, 2017. There is one major problem. There's no evidence in the record that any such appointment ever existed, let alone that it was cancelled.

Odom attached to her amended complaint a letter from Lakeside dated February 8, 2017. That letter informed Odom that she cannot continue to be late for appointments. And going forward, if she is more than 15 minutes late, she will lose her time slot. That letter cannot give rise to a claim, either. There's no evidence that Lakeside ever cancelled an appointment because

Odom showed up late. Odom is complaining about a policy that she doesn't like, but there's no evidence that the policy ever harmed her on February 2, 2017, or at any other time.

Lakeside moved for summary judgment, arguing that there is no evidence that an appointment on February 2, 2017 ever existed, let alone that Lakeside took any action against her. *See* Def.'s Mtn. for Summ. J. (Dckt. 90). Lakeside's motion for summary judgment is hereby granted.

## Background

In 2014, Odom lost custody of her son less than a week after his birth. *See* DCFS File Excerpt, at 21 of 21 (Dckt. No. 92-1). The Illinois Department of Children and Family Services received a hotline tip that the newborn had tested positive for PCP and cocaine. *Id.* Following the tip, DCFS obtained temporary custody and placed the infant in foster care. *Id.*; *see also id.* ("Ms. Odom had previous involvement in Texas regarding her six older children. According to records, she has a history of neglectful supervision and physical abuse.").

Odom participated in supervised visits with her son from time to time. *See* Def.'s Statement of Facts, at ¶ 13 (Dckt. No. 91). The visits took place with the help of Lakeside Community Center, a licensed Child Welfare Agency. Lakeside has a contract with the state of Illinois to provide family-related services. *See* Agreement (Dckt. No. 92-2).

The bundle of services provided by Lakeside includes foster care. *See* Def.'s Statement of Facts, at ¶ 4 (Dckt. No. 91). Lakeside's contract with DCFS includes the following description of its foster care services: "Services are to promote permanency by maintaining, strengthening and safeguarding the functioning of families to (1) prevent substitute care placement[,] (2) promote family reunification, (3) stabilize foster care placements, (4) facilitate youth development, and (5) ensure the safety, permanency and wellbeing of children." *See*

2

Agreement, at 48–49 of 101 (Dckt. No. 92-2). Those services include providing a safe place where biological parents can meet with their children for scheduled appointments.

Lakeside provided foster care services for Odom's child. Lakeside coordinated "the child's foster care, adoption, medical and emotional care." *See* Def.'s Statement of Facts, at ¶ 13 (Dckt. No. 91). There is no suggestion in the record that Lakeside itself had custody of the child.[1] But Lakeside did provide a safe place for visits. Lakeside coordinated visits between the child and Odom, and the child and his biological father (separately). *Id.*

There is not much in the record about how often Odom visited her son at Lakeside, or how often she arrived late or missed an appointment. In 2015, Odom reported that "she feels that she is not getting her services and visits with her child." *See* 1/29/15 Contact Note (Dckt. No. 92-1, at 13 of 21). In 2016, Odom reported that she was having transportation issues, so Lakeside offered to reimburse her for gas. *See* 4/28/16 Letter (Dckt. No. 92-1, at 8 of 21). That's about it.

On February 2, 2017, Odom filed a *pro se* complaint against Lakeside, complaining about the loss of access to her child. The complaint took issue with the treatment that she allegedly received that very day. Specifically, the handwritten complaint alleged that at 11:40 a.m. on February 2, 2017, Lakeside "failed to allow my son to be returned home although I have been in constant services and regulations." *See* Cplt., at 2–3 (Dckt. No. 1).

Odom seemed to complain about the loss of her parental rights, too. The complaint alleged that "this Lakeside Community Committee has violated civil rights of return home [sic]

---

[1] The record includes a reference to the child's guardians and foster parents, so presumably they had physical custody. *See* Dckt. No. 92-1, at 12 of 21; *id.* at 17 of 21. In its reply, Lakeside observes that the state itself had custody of the child, given that the child was in foster care. *See* Reply, at 1–2 (Dckt. No. 96). So, it appears that the state had legal custody, but the foster parents had physical custody, of the child. The important point is that Lakeside did not have custody of the child. It provided a meeting place.

3

of my biological son in 12 months this agency has destroyed reunification of biological mother birth parents on completion of service in 12 months . . . ." *Id.* at 4.

Judge Gottschall (this Court's predecessor before reassignment) appointed Odom counsel. *See* 2/8/17 Order (Dckt. No. 6). A few attorneys have come and gone since then. The Court appointed replacement counsel in the months that followed.

Lakeside sent Odom a letter on February 8, 2017 (*i.e.*, about a week after the filing of the complaint, but months before service of process). The letter called attention to the fact that Odom had a track record of late arrivals for monthly visits with her son. And Lakeside let her know that she would lose her time slot if she showed up more than 15 minutes late for future appointments:

> This letter is in regards to the monthly visitation that you have scheduled for your son. In the past you have been more than 15 minutes late for your parent/child visits, including the last visit that occurred on 1/24/17. You have infringed upon the birth father's time to visit with his son.
>
> Moving forward, if you are more than 15 minutes late for any other visit, it will be canceled. The expectation is for you to leave your place at an earlier time to make it to the parent/child visit. Your next scheduled parent child visit is Tuesday February 21, 2017 from 11:30am to 12:30pm at the agency.

*See* 2/8/17 Letter (Dckt. No. 30-1, at 103 of 103).

Judge Gottschall later denied Lakeside's motion to dismiss. *See* 1/30/18 Order (Dckt. No. 25). The Court channeled discovery into exploring whether Lakeside is a state actor. *See* 2/21/18 Order (Dckt. No. 26).

Meanwhile, the Circuit Court of Cook County terminated Odom's parental rights. *See* Def.'s Statement of Facts, at ¶ 3 (Dckt. No. 91); 4/12/18 Order (Dckt. No. 92-3). But that decision is not part of this lawsuit.

4

Odom later filed an amended complaint, but the core allegation didn't change very much. *See* First Am. Cplt. (Dckt. No. 30). Once again, Odom claimed that Lakeside took away her scheduled visitation time on one particular day: February 2, 2017. *See* First Am. Cplt. at 2–3 (alleging that Lakeside "[f]ailed to provide access to child during visitation pursuant to Family Services Plan" on "02/02/2017"). She also alleged that, on February 2, 2017, Lakeside "[f]ailed to abide by the late attendance policy in effect" and "canceled visitation without sufficient notice of policy and not in accordance with said policy." *Id.* at 3.

Odom claimed that the inability to see her child that morning rose to the level of a constitutional violation. In her view, Lakeside imposed an unconstitutional policy: cancelling a scheduled visitation if she was more than 15 minutes late. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 5 (Dckt. No. 94).

The amended complaint includes three Counts. The first claim is under section 1983, which authorizes claims against every "person" who, under color of state law, deprives another person of their rights "secured by the Constitution and laws." *See* 42 U.S.C. § 1983. She also brings a conspiracy claim under section 1985, and a claim under section 1986 for failing to prevent a violation of her rights. *See* 42 U.S.C. §§ 1985, 1986.

Odom attached Lakeside's letter dated February 8, 2017 as an exhibit to the amended complaint. *See* 2/8/17 Letter (Dckt. No. 30-1, at 103 of 103). But she did not attach anything pointing to an appointment, or the cancellation of an appointment, on February 2, 2017.

After months of discovery, Lakeside moved for summary judgment, arguing it did not act under color of state law. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 33-1). Later, Judge Gottschall directed the parties to brief whether Odom's claims were barred by the *Rooker-Feldman* doctrine, which prevents state-court losers from challenging state-court judgments in federal

court. Some paragraphs of the amended complaint suggested that Odom was challenging the state court's decision to terminate her parental rights. *See* 6/21/19 Order (Dckt. No. 46).

Meanwhile, Odom went off the grid. *See* Dckt. No. 71. Odom's counsel could not find her for months. *See id.*; *see also* Dckt. No. 68, at 2; Dckt. No. 70.

In an initial status report after reassignment to this Court, Odom's new counsel reported that her whereabouts were unknown. *See* Initial Status Report, at 5 (Dckt. No. 68). "Plaintiff's counsel has been unable to locate Ms. Odom." *Id.* It wasn't for lack of trying. Counsel tried to reach her by email, by phone, and by process server to several addresses, without success. *Id.* at 4. At a hearing, counsel reported that they did not know if Odom was still alive.

But in a stroke of luck, this Court called attention to the fact that it had someone named Odom in another case, brought by a detainee against the Cook County Jail. So this Court directed counsel to look into it, and sure enough, counsel discovered that their client was incarcerated. *See* Dckt. No. 71; *see also* Cplt., *Odom-Lowe v. Cook County Jail*, Case No. 19-cv-6474 (N.D. Ill. Sept. 27, 2019).

This Court later ruled on Lakeside's motion for summary judgment. *See* Dckt. No. 72; 3/31/20 Order (Dckt. No. 75). This Court denied Lakeside's motion for summary judgment, finding that the *Rooker-Feldman* doctrine did not bar her claim. *See* 3/31/20 Order, at 3. This Court denied the motion based on Odom's representation that she was not challenging the termination of her parental rights. *See* Pl.'s Resp., at 6 (Dckt. No. 60) ("Ms. Odom is not seeking to vacate the state court termination order."). She is not challenging any decision by any state court. The case is about visitation rights, not parental rights.

This Court also ruled that the parties had not adequately addressed whether Lakeside was a state actor. *See* 3/31/20 Order, at 5 (Dckt. No. 75). So the Court denied the motion for

6

summary judgment without prejudice and gave Lakeside leave to file a second, properly supported, motion for summary judgment. *Id.*

Now, Lakeside is trying again. Lakeside moved for summary judgment a second time. Lakeside argues that it did not act under color of state law. Lakeside also argues that there is no evidence that it violated Odom's constitutional rights. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 92).

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute about any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-

7

movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

The facts here are undisputed. Odom filed a brief in response to the motion for summary judgment, but did not respond to Lakeside's Rule 56.1(a)(3) Statement of Undisputed Material Facts. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J. (Dckt. No. 94). As a result, the Court accepts as undisputed the facts put forward (and properly supported) by Lakeside. "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* N.D. Ill. L.R. 56.1(e)(3); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) (nonprecedential disposition) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.").

But Odom's failure to respond does not mean that Lakeside must prevail. While the material facts are undisputed, the burden remains with the movant, Lakeside, to show that it is entitled to judgment as a matter of law. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant.").

"Federal Rule of Civil Procedure 56 imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary." *Sterk v.*

8

*Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (quoting *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013)). A party can carry that burden by showing an *absence* of evidence to support the non-movant's case. *See Celotex*, 477 U.S. at 325; *Modrowski*, 712 F.3d at 1168. At that point, the burden shifts to the non-movant (here, Odom) to "make a showing sufficient to establish the existence of an element essential to that party's case." *Sterk*, 770 F.3d at 627.

The motion at hand is a *Celotex*-type motion. *See* Def.'s Mtn. for Summ. J., 6–7 (Dckt. No. 92). That is, Lakeside argues that Odom has failed to come forward with evidence that could support a prima facie case.

So, this Court's task is to consider Odom's claims in light of the undisputed facts, view the facts in Odom's favor, and consider whether Lakeside is entitled to summary judgment. After surveying the record, the Court concludes that the undisputed facts require judgment in Defendant's favor.

## Discussion

Odom's first claim is under section 1983. She claims that Lakeside deprived her of her constitutional right to visit with her son on February 2, 2017, failed to abide by the late attendance policy, and canceled the visitation without sufficient notice. *See* First Am. Cplt., at 2–3 (Dckt. No. 30). To support her claim, Odom must come forward with evidence sufficient to show that Lakeside violated her constitutional rights. A plaintiff must establish that "the defendants deprived him of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law." *See Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005) (cleaned up).

Odom's section 1983 claim fails for a simple reason: there is no evidence that Lakeside cancelled an appointment on February 2, 2017. Or at any other time. So there is no evidence that Lakeside violated her rights in any way.

The complaint is about an appointment on February 2, 2017. But there is no evidence in the record that any such appointment ever existed. *See* Def.'s Statement of Facts, at ¶¶ 17–18. (Dckt. No. 91). Odom didn't have an appointment that day, let alone lose one. There is no evidence that Lakeside cancelled an appointment because she was late.

The same is true for other appointments. According to the record, she had appointments on January 24, 2017 and February 21, 2017. *Id.* at ¶ 18. There's no evidence that Lakeside pulled the plug on either of those appointments.

Odom did not respond to Lakeside's statement of material facts, which demonstrated that there was no appointment on February 2, 2017. Lakeside established that it did not take away her visitation rights based on a late policy, and Odom mustered no response. *Id.* at ¶¶ 17–18. Odom did not file a statement of additional facts, either, so she did not bolster the record with any additional evidence. And in her brief, Odom did not discuss the underlying facts at all. Odom did not address the fact that there is no evidence that she lost an appointment for being late.

Overall, Odom is complaining about a late policy that requires her to be there within 15 minutes of the scheduled start time, or else lose the appointment. Odom may not like that policy, but she came forward with no evidence that Lakeside enforced it against her at any time. So she has no claim.

Summary judgment is the time for a party to put its evidentiary cards on the table. The time to submit evidence was now, but Odom came forward with nothing. *See Hammel v. Eau*

10

*Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (cleaned up).

Odom's claim would fail even if Lakeside had cancelled an appointment when she showed up late. She alleges a violation of her constitutional right to be with her child, but she had limited rights to begin with. *See Troxel v. Granville*, 530 U.S. 57, 68 (2000) ("[S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.") (addressing the right of "*fit* parents" to control visitation rights of extended family) (emphasis added). She lost custody, and she is not challenging (and cannot challenge) that state-court decision here. At best, she is claiming a loss of a non-custodial visitation right.

Even if, for the sake of argument, constitutional rights were at play, it would make no difference. Constitutional rights can be waived, even in criminal cases. There is nothing problematic – and certainly nothing *constitutionally* problematic – with a rule that a person loses something by not showing up on time. If she doesn't show up for an appointment, she loses the appointment. That's how life works. There is no constitutional prohibition against "you snooze, you lose."

It is not unconstitutional to cancel an appointment with a person who is not there. As the saying goes, ninety percent of life is showing up. Nothing in the Constitution would prevent Lakeside from cancelling an appointment when she wasn't there anyway. There is no constitutional right to show up late.

11

There's no hint in the record that Lakeside adopted that policy for impermissible reasons. Quite the opposite. Lakeside gave a sensible reason for implementing the policy. "In the past you have been more than 15 minutes late for your parent/child visits, including the last visit that occurred on 1/24/17. You have infringed upon the birth father's time to visit with his son." *See* 2/8/17 Letter (Dckt. No. 30-1, at 103 of 103). A late arrival causes disruption, and interferes with the ability of the biological father to see his son, too.

The amended complaint includes related allegations, but they fail for the same reasons. Odom claims that Lakeside has "failed to allow for scheduled visitation, failed to provide transportation to scheduled visitation, and failed to notify mother of available visitation." *See* First Am. Cplt., at 4 (Dckt. No. 30). Suffice it to say that Odom has not come forward with any evidence to support those allegations.

Odom's section 1983 claim also does not pass muster under *Monell v. Department of Social Services*, 463 U.S. 658 (1978). *Monell* applies to section 1983 claims against private entities who are state actors (for now, the Court will indulge that assumption, purely for the sake of argument). *See Garcia v. Armor Corr. Health Serv., Inc.*, 788 F. App'x 393 (7th Cir. 2019); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 792–95 (7th Cir. 2014). To be liable, the corporation must have "maintained an unconstitutional policy or custom," and the policy or custom must have caused the injury. *See Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015); *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).

While there is no bright-line rule defining what qualifies as a widespread policy or custom, the conduct in question must take place more than a few times. *See Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020) (citing *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 292, 303 (7th Cir. 2010)); *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court

has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident – or even three incidents – do not suffice."). "[A] plaintiff pursuing a widespread practice claim generally must allege more than one, and sometimes more than three, instances of misconduct." *Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018) (citing *Thomas*, 604 F.3d at 303). "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances of misconduct other than that from which he suffered." *Id.*

Odom has come forward with no such evidence. Odom complains about the loss of an appointment on February 2, 2017, and complains about Lakeside's statement that she needs to be on time. But there is no evidence that Lakeside ever enforced that policy against her, so it did not cause her to suffer an injury. And more generally, there is no evidence that Lakeside has a policy, practice, or custom of cancelling appointments or imposing unreasonable late policies on parents.

Odom's second and third claims are under sections 1985 and 1986, but those claims don't survive, either. Section 1985 requires a conspiracy between "two or more persons." *See* 42 U.S.C. § 1985. A party cannot conspire with itself. But Odom's complaint is about Lakeside only.

In its earlier summary judgment decision, this Court directed Odom to address who Lakeside conspired with, because a conspiracy-of-one is not a conspiracy. *See* 3/31/20 Order, at 5 (Dckt. No. 75). But in her response, Odom did not address the issue. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J. (Dckt. No. 94). Without identifying a co-conspirator or offering evidence of a conspiracy with a state actor, Odom cannot succeed on a section 1985 claim. *See Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009).

Case: 1:17-cv-00877 Document #: 97 Filed: 08/25/21 Page 14 of 15 PageID #:653

The second claim takes the third claim down with it. Section 1986 claims are derivative of section 1985 claims. *See Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986."). By failing to present evidence to support a section 1985 claim, Odom has failed to bring a section 1986 claim, too.

In their briefs, the parties devote most of their attention to whether Lakeside is a state actor. Lakeside is a private party, not a governmental entity, but that status is not dispositive. A private party can constitute a state actor in certain circumstances. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815–16 (7th Cir. 2009) (collecting cases). Those situations include when the state delegates a public function to a private entity, or when there is such a close nexus between the state and the private conduct that the private conduct reasonably may be treated as state action. *Id.* (citing *Terry v. Adams*, 345 U.S. 461, 484 (1953); *West v. Atkins*, 487 U.S. 42, 56–57 (1988); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991); and *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

This Court does not need to reach that issue because there was no underlying violation. But for good measure, this Court will note that two courts in this district have found that Lakeside is not a state actor. *See Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *4–6 (N.D. Ill. 2011); *McClendon v. Lakeside Cmty. Comm.*, Case No. 10-cv-00487 (N.D. Ill. 2010) (Dckt. No. 5).

In sum, the undisputed facts show that Odom has no claim. There is no evidence of an appointment on February 2, 2017, let alone a cancellation. There is no evidence that Lakeside deprived her of any time with the child. There is no evidence of a co-conspirator, either. Without evidence to support her claims, there is no reason for this case to go to a jury.

## Conclusion

Defendant's motion for summary judgment is hereby granted.

Date: August 25, 2021

Steven C. Seeger
United States District Judge